**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mariano Cortez Tobon,         ) | No. CIV 07-1731-PHX-JWS (GEE) |
| Petitioner,         ) | **REPORT AND RECOMMENDATION** |
| vs.         ) | |
| Alberto Gonzales; et al.,         ) | |
| Respondents.         ) | |

On September 10, 2007, the petitioner, Mariano Cortez Tobon, filed a Petition for Writ of Habeas Corpus pursuant to Title 28, United States Code, Section 2241. He argues his current detention while awaiting removal is contrary to law. The respondents filed an answer on November 29, 2007. Tobon did not file a reply.

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Edmonds for a Report and Recommendation.

The Magistrate Judge recommends that the District Court, after its independent review of the record, grant the petition. Tobon has been detained for more than six months pending removal, and there is no significant likelihood of removal in the reasonably foreseeable future.

Summary of the Case

Mariano Cortez Tobon is a native and citizen of Guatemala. (Respondents' answer, p. 2.) On September 9, 1999, Tobon presented himself at the San Ysidro port of entry and offered as identification a counterfeit Form I-551 Resident Alien Green Card. *Id.* When Tobon was

properly identified, he expressed fear at the prospect of returning to Guatemala. *Id.* He was taken into custody pending a "credible fear interview." *Id.* When this interview was conducted on September 20, 1999, the government concluded there was a significant possibility Tobon could establish eligibility for asylum. *Id.*

On September 30, 1999, the government issued Tobon a Notice to Appear charging him with removability because he attempted to enter the country by fraud and because he did not have permission to enter the United States. (Respondents' answer, p. 2.)  Tobon was paroled into the United States pending his removal hearing. *Id.* Tobon submitted an I-589 application for asylum. *Id.*, pp. 2-3.

On October 23, 2003, the Immigration Judge (IJ) denied Tobon's application for asylum and ordered him to voluntarily depart the United States by December 23, 2003. *Id.*, p. 3. The Board of Immigration Appeals (BIA) affirmed the decision of the IJ on March 15, 2005. *Id.* Tobon filed an appeal with the Ninth Circuit, but the action was dismissed for failure to prosecute on October 2, 2006. *Id.*, Exhibit 13.

In January of 2007, Tobon was arrested in West Contra Costa County, CA, for driving under the influence and violating probation. *Id.*, p. 3. Shortly afterwards, he was taken into federal custody pending removal. *Id.* On April 19, 2007, the government issued Tobon a Notice to Alien of File Custody Review and informed him that the Guatemalan consulate determined his birth certificate was fraudulent. *Id.*

On August 24, 2007, Tobon filed the instant petition for writ of habeas corpus. He argues his continued detention is contrary to law because he has been detained for more than six months pending removal and there is no significant likelihood of removal in the reasonably foreseeable future. (Petition, p. 4.)

Discussion

If an alien is determined to be removable, 8 U.S.C. § 1231 governs the detention and removal process. Section 1231(a)(2) authorizes the detention of the alien during the 90-day "removal period" which the statute assumes will be adequate in most circumstances to complete

1  the removal. Detention past the 90-day limit may be allowed if the alien fails to make a good
2  faith effort to obtain the necessary travel documents. *See* 8 U.S.C. § 1231(a)(1)(C).

3  This "removal period" ordinarily begins on "[t]he date the order of removal becomes
4  administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). If the alien files an appeal and the court
5  of appeals orders a stay of removal, the removal period begins on "the date of the court's final
6  order." 8 U.S.C. § 1231(a)(1)(B)(ii).

7  In this case, Tobon was ordered removed by the IJ on October 23, 2003. Tobon's
8  "removal period" began on October 2, 2006, when the Ninth Circuit dismissed his appeal. *See*
9  8 C.F.R. 1241.1. At that time, the 90-day removal period began, and Tobon's detention was
10  authorized by 8 U.S.C. § 1231(a)(2).

11  Where, as here, removal is not accomplished within the 90-day removal period, the
12  government may detain the alien past the removal period for a period reasonably necessary to
13  accomplish the removal. *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001) (construing 8 U.S.C. §
14  1231(a)(6)). This detention, however, is not without Constitutional limitation. *Id.* Extended
15  detention beyond the removal period violates due process if six months have passed and there
16  is no significant likelihood of removal in the reasonably foreseeable future. *Zadvydas v. Davis*,
17  533 U.S. 678, 699, 701 (2001); *See also Clark v. Martinez*, 543 U.S. 371, 378 (2005)
18  (extending the holding of *Zadvydas* to inadmissible aliens). "[O]nce the alien provides good
19  reason to believe that there is no significant likelihood of removal in the reasonably foreseeable
20  future, the government must respond with evidence sufficient to rebut that showing." *Zadvydas*
21  *v. Davis*, 533 U.S. 678, 701, 121 S.Ct. 2491, 2505 (U.S.,2001). To benefit from the holding
22  in *Zadvydas*, the alien must cooperate with the government's efforts to remove him. "[W]hen
23  an alien refuses to cooperate fully and honestly with officials to secure travel documents from
24  a foreign government, the alien cannot meet his or her burden to show there is no significant
25  likelihood of removal in the reasonably foreseeable future." *Lema v. I.N.S.*, 341 F.3d 853, 856
26  (9th Cir. 2003).

27
28

1   In the instant case, Tobon has been detained beyond the six-month period. He argues
2  there is no significant likelihood of removal in the reasonably foreseeable future because he has
3  fully cooperated in this government's attempt to remove him, but the government of Guatemala
4  refuses to give him travel documents. In his affidavit, Tobon asserts he was born in
5  Huehuetengango, Guatemala on the date and to the parents indicated on his birth certificate.
6  (Petition, attachment.) He apparently supplied the Guatemalan consulate with this birth
7  certificate, but the consulate claims it is fraudulent and refuses to issue travel documents.
8  Tobon asserts in his affidavit that the document is genuine. *Id.*

9   The government argues Tobon's detention is lawful because he has not cooperated in
10 good faith in his removal. Ordinarily, in this situation the court reviews the record to determine
11 whether the factual findings of the ICE[1] are supported by substantial evidence. *See Lema v.*
12 *I.N.S.*, 341 F.3d 853, 855 (9th Cir. 2003); *see also Arrington v. Daniels*; __ F.3d __, __, 2008
13 WL 441835 (9th Cir. 2008) ("In conducting our review, we may look only to the administrative
14 record to determine whether the agency has articulated a rational basis for its decision."). The
15 record, however, does not contain any formal decision from the ICE regarding Tobon's
16 cooperation, or lack thereof. The only relevant document is a declaration by Jesse M. Ray who
17 is employed as a deportation officer for the ICE. *See* (Respondents' answer, Exhibit 19, ¶ 3.)
18 Ray reports there is a notation in the alien administration file ("A-file") to the effect that
19 Tobon's birth certificate "was found to be fraudulent by a consular official . . . and as a result
20 the consulate of Guatemala has declined to provide a travel document until such time as valid
21 information is received." *Id.* There is no other information.

22  Based on this record, the court cannot conclude Tobon is not cooperating in good faith
23 with his removal. Apparently, someone at the consulate believes Tobon's birth certificate to
24 be fraudulent. Unfortunately, there is no indication who that person is, what evidence supports
25 this conclusion, or what the term "fraudulent" means in this context. The government has made

---

[1] The office of Immigration and Custom Enforcement (ICE) was formerly know as the Immigration and Naturalization Service (INS). (Respondents' answer, Exhibit 19, ¶ 1.)

- 4 -

no formal finding concerning whether Tobon has cooperated in good faith, and if not, what he must do now to facilitate his departure. For his part, Tobon has apparently done what he was asked to do. Between May and July of 2007, Tobon spoke with his consulate at least three times, wrote a letter to the Consulate General, and submitted to an interview with a consulate official. (Respondents' answer, Exhibit 18.) He submitted a birth certificate, which he apparently believes is genuine.

Tobon has been held pending removal for approximately 12 months. There is no significant likelihood of removal in the reasonably foreseeable future.

Recommendation

The Magistrate Judge recommends that the District Court, after its independent review of the record, grant the Petition for Writ of Habeas Corpus filed on September 10, 2007.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).

The Clerk is directed to send a copy of this Report and Recommendation to the petitioner and the respondents.

DATED this 28th day of February, 2008.

Glenda E. Edmonds
United States Magistrate Judge